16-55249

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

**NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, et al.,**

Plaintiffs and Appellants,

v.

**KAMALA HARRIS, Attorney General of the State of California, in her official capacity, et al.,**

Defendants and Appellees.

On Appeal from the United States District Court
for the Southern District of California

No. 15-cv-02277-JAH-DHB
Hon. John A. Houston, Judge

## APPELLEES' ANSWERING BRIEF

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
STEPAN A. HAYTAYAN
Supervising Deputy Attorney
General

ANTHONY R. HAKL
Deputy Attorney General
State Bar No. 197335
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 322-9041
  Fax: (916) 324-8835
  Email: Anthony.Hakl@doj.ca.gov
*Attorneys for Appellees Kamala D.
Harris and Edmund G. Brown, Jr.*

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................... 1

Jurisdictional Statement ........................................................ 3

Statement of Issues ............................................................... 3

Statement Under Circuit Rule 28-2.7 ................................... 4

Statement of the Case ........................................................... 4

    I.    The Reproductive Fact Act ........................................ 4

        A.   Notice Requirement Applicable to Licensed Facilities ............................................................ 6

        B.   Notice Requirement Applicable to Unlicensed Facilities ............................................................ 8

        C.   Civil Penalty and Enforcement Provisions .................. 10

    II.   Procedural History ................................................... 10

        A.   Plaintiffs File Suit Challenging the Reproductive Fact Act. ............................................................ 10

        B.   The Parties ................................................... 11

            1.   Plaintiffs ............................................. 11

            2.   Defendants ......................................... 13

        C.   Plaintiffs' Claims ........................................... 14

        D.   The District Court Denied Plaintiffs' Motion for Preliminary Injunction ...................................... 16

Standard of Review ............................................................. 18

Summary of Argument ....................................................... 19

Argument ............................................................................ 21

    I.    Plaintiffs Failed to Demonstrate a Likelihood of Success on the Merits of Their Free Speech Claim. ............................ 21

        A.   The Notice Requirement Applicable to Licensed Facilities is Constitutional. ................................... 21

i

**TABLE OF CONTENTS**
**(continued)**

Page

1.  The District Court Correctly Concluded
    That the Act Regulates Professional
    Conduct ..................................................................... 23

2.  To the Extent the Notice Affects Speech, it
    is a Permissible Regulation Under the
    Professional Speech Doctrine. ........................... 24

    a.  The Notice is Provided in the Context
        of a Professional Relationship. ................ 25

    b.  The Court Applied Intermediate
        Scrutiny Correctly in its Professional
        Speech Analysis. ....................................... 29

3.  The Notice is a Permissible Regulation of
    Commercial Speech. ........................................... 33

    a.  Any Speech by Plaintiffs is at Most
        Commercial Speech. ................................. 34

    b.  As Commercial Speech, the Notice is
        Subject to Rational Basis Review
        Because it Includes Only Factual and
        Uncontroversial Information. ................... 38

B.  The Notice Requirement Applicable to Unlicensed
    Facilities is Constitutional. ...................................... 42

    1.  The Notice is a Permissible Regulation of
        Commercial Speech. ........................................... 42

    2.  The Notice Requirement Survives Any
        Level of Scrutiny ................................................ 45

C.  Plaintiffs Failed to Demonstrate a Likelihood of
    Success on Their Free Exercise Claim. ..................... 49

II.  The Balance of Harms and the Public Interest Weighed
    Heavily Against an Injunction. ........................................ 54

Conclusion ................................................................................. 57

## TABLE OF CONTENTS
### (continued)

| | Page |
|---|---|
| Statement of Related Cases | 58 |
| Certificate of Compliance | 60 |
| Addendum | 62 |

iii

# TABLE OF AUTHORITIES

**Page**

CASES

*1-800-411-Pain Referral Serv., LLC v. Otto*
744 F.3d 1045 (8th Cir. 2014)................................................................41

*A Woman's Friend Pregnancy Resource Clinic, et al. v. Harris*
(9th Cir. 15-17517) (E.D. Cal. 2:15-cv-02122-KJM-AC).........................6

*Am. Acad. of Pain Mgmt. v. Joseph*
353 F.3d 1099 (9th Cir. 2004)..........................................................34, 43

*Bates v. State Bar of Arizona*
433 U.S. 350 (1977).............................................................................36

*Big Country Foods, Inc. v. Bd. of Educ.*
868 F.2d 1085 (9th Cir. 1989)........................................................19, 33

*Bolger v. Youngs Drug Products Corp*
463 U.S. 60 (1983)..............................................................34, 35, 36, 43

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*
520 U.S. 564 (1997).............................................................................38

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of
New York*
447 U.S. 557 (1980).................................................................33, 41, 42

*Central Rabbinical Congress of U.S. & Canada v. New York
City Dept. of Health & Mental Hygiene*
(2d Cir. 2014) 763 F.3d 183...........................................................52, 53

*Centro Tepeyac v. Montgomery Cnty.*
722 F.3d 184 (4th Cir. 2013).....................................................47, 48, 49

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*
508 U.S. 520 (1993).................................................................50, 52, 53

# TABLE OF AUTHORITIES
## (continued)

Page

*Clark v. Coye*
    60 F.3d 600 (9th Cir. 1995)...................................................................55

*Dana's R.R. Supply v. Atty. Gen. Fla.*
    807 F.3d 1235 (11th Cir. 2015)............................................................42

*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014)..............................................................54

*Employment Division v. Smith*
    494 U.S. 872 (1990)...............................................................................50

*Evergreen Ass'n, Inc. v. City of New York*
    740 F.3d 233 (2d Cir.)...................................................................*passim*

*Fargo Women's Health Organization, Inc. v. Larson*
    381 N.W. 2d 176 (N.D. 1986)..............................................................37

*Gonzales v. Carhart*
    550 U.S. 124 (2007)...............................................................................25

*Greater Baltimore Center for Pregnancy Concerns, Inc. v.*
    *Baltimore*
    721 F.3d 264 (4th Cir. 2013)................................................................37

*King v. Governor of the State of New Jersey*
    767 F.3d 216 (2014)...............................................................24, 25, 42

*Klein v. City of San Clemente*
    584 F.3d 1196 (9th Cir. 2009)..............................................................54

*LivingWell Medical Clinic, et al. v. Kamala Harris, et al.*
    (9th Cir. 15-17497) (N.D. Cal 4:15-cv-04939-JSW)..............................6

*Madsen v. Women's Health Ctr., Inc.*
    512 U.S. 753 (1994)...............................................................................29

v

## TABLE OF AUTHORITIES
### (continued)

Page

*Mann v. Bd. of Med. Examiners of the State*
    31 Cal. 2d 30 (1947).................................................26

*Matthews v. National Football League Management Council*
    688 F.3d 1107 (9th Cir. 2012)...............................39

*Milavetz, Gallop & Milavetz, P.A. v. U.S.*
    559 U.S. 229 (2010).............................................38

*N.D. ex rel. Parents Acting as Guardian Ad Litem v. Haw. Dep't of Educ.*
    600 F.3d 1104 (9th Cir. 2010)...............................18

*National Ass'n of Manufacturers v. S.E.C.*
    800 F.3d 518 (D.C. Cir. 2015).........................35, 38

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*
    434 U.S. 1345 (1977)...........................................55

*Pickup v. Brown*
    740 F.3d 1208 (9th Cir. 2014).........................*passim*

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*
    530 F.3d 724 (8th Cir. 2008).................................39

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*
    686 F.3d 889 (8th Cir. 2012).................................39

*Planned Parenthood of Southeastern Pennsylvania v. Casey*
    505 U.S. 833 (1992).........................................22, 25

*Reed v. Town of Gilbert, Ariz.*
    135 S. Ct. 2218 (2015).........................................22

vi

**TABLE OF AUTHORITIES**
(continued)

Page

*Retail Digital Network, LLC v. Appelsmith*
 810 F.3d 638 (9th Cir. 2016).................................................40, 42

*Riley v. National Federation of the Blind of North Carolina, Inc.*
 (1988) 487 U.S. 781.................................................................35, 48

*Shea v. Bd. of Med. Examiners*
 81 Cal. App. 3d 564 (1978).....................................................25, 26

*Sorrell v. IMS Health Inc.*
 131 S. Ct. 2653 (2011).................................................29, 40, 41, 42

*Sports Form, Inc. v. United Press Int'l, Inc.*
 686 F.2d 750 (9th Cir. 1982)...........................................................19

*Stormans, Inc. v. Wiesman*
 794 F.3d 1064 (9th Cir. 2015)....................................................50, 51

*Stuart v. Camnitz*
 774 F.3d 238 (4th Cir. 2014)...........................................................31

*Sw. Voter Registration Educ. Project v. Shelley*
 344 F.3d 914 (9th Cir. 2003) (en banc) (per curiam) ...........................18

*United States v. Pantojas-Cruz*
 800 F.3d 54 (1st Cir. 2015).............................................................43

*United States v. Philip Morris USA, Inc.*
 566 F.3d 1095 (D.C. Cir. 2009) (per curiam) ...............................35, 44

*United States v. United Foods, Inc.*
 533 U.S. 405 (2001)........................................................................39

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*
 425 U.S. 748 (1976)........................................................................34

vii

# TABLE OF AUTHORITIES
## (continued)

Page

*Virginia Vermiculite, Ltd v. W.R. Grace & Co.- Conn.*
  156 F.3d 535 (4th Cir. 1998).................................................................38

*Weinberger v. Romero-Barcelo*
  456 U.S. 305 (1982)........................................................................56

*Winter v. Natural Resources Defense Council, Inc.*
  555 U.S. 7 (2008)...........................................................................54

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*
  471 U.S. 626 (1985)...........................................................33, 34, 38, 43

### STATUTES

28 United States Code
  § 1292(a)(1)...................................................................................3
  § 1331.........................................................................................3

42 United States Code
  § 238n.....................................................................................14, 15
  § 1983........................................................................................14

Business & Professions Code
  § 4122(a) ....................................................................................28

# TABLE OF AUTHORITIES
## (continued)

Page

Health & Safety Code
§ 1204 ................................................................. 6, 7, 12
§ 1204(a)(1) ................................................................. 6
§ 1204(b) ................................................................. 6
§ 1206 ................................................................. 6
§ 1206(h) ................................................................. 6
§ 12472(c)(2) ................................................................. 51
§ 75027(d) ................................................................. 7
§ 123471(a) ................................................................. *passim*
§ 123471(b) ................................................................. 6
§ 123472(a)(1) ................................................................. 8, 35
§ 123472(a)(2)(A)-(C) ................................................................. 8
§ 123472(b)(1) ................................................................. 9, 43
§ 123472(b)(2)-(3) ................................................................. 9
§ 123473(a) ................................................................. 10
§ 123473(a) (1)-(2) ................................................................. 10, 12

**COURT RULES**

Federal Rules of Evidence
§ 201(b)(2) ................................................................. 39

**OTHER AUTHORITIES**

California Code of Regulations
Title 16, § 1707.6 ................................................................. 28
Title 22, § 75026 ................................................................. 7, 26
Title 22, § 75027(a) ................................................................. 26
Title 22, § 75027(d) ................................................................. 26

**INTRODUCTION**

This appeal involves a challenge to California Assembly Bill No. 775, also known as the Reproductive FACT (Freedom, Accountability, Comprehensive Care, and Transparency) Act. The California Legislature passed the law in response to the licensed and unlicensed crisis pregnancy centers in California that through "intentionally deceptive advertising and counseling practices often confuse, misinform, and even intimidate women from making fully-informed, time-sensitive decisions about critical health care." Assem. Comm. on Health, Analysis of Assembly Bill No. 775, at 3.[1]

The Act, which became effective on January 1, 2016, contains two notice provisions, both of which are at issue in this case. One provision requires medical clinics licensed by the State of California that provide pregnancy-related services to notify their patients that free or low cost public healthcare services—including contraception, prenatal care, and abortion services—are available to patients. The other provision requires unlicensed facilities covered by the Act to provide a statement advising consumers that it is not licensed as a medical facility by the State of California. The information contained in the notices is not subject to factual dispute and

---

[1] This committee analysis is at Appellants' Excerpts of Record ("ER") 0084.

1

does not promote or disparage any particular practice or form of reproductive healthcare. The Legislature found that these notices are "[t]he most effective way to ensure that women quickly obtain the information and services they need to make and implement timely reproductive decisions." Assem. Bill No. 775, § 1(a)-(d). [2]

Plaintiffs-Appellants (Plaintiffs) include a state-licensed medical clinic providing pregnancy-related medical services; an unlicensed facility covered by the Act; and a non-profit organization comprised of member pregnancy centers throughout the country, including California. Plaintiffs oppose the notices required by the Act. Advancing free speech and free exercise claims, they moved to preliminarily enjoin the statute's operation.

The district court's decision denying the preliminary injunction is correct and should be affirmed. With respect to the likelihood of success on the merits of the free speech claims, the notice requirement governing licensed facilities regulates both professional and commercial speech, and directly advances California's important state interests in ensuring that women know of the low cost reproductive health services available to them. It therefore satisfies both rational basis and intermediate review. While the

---

[2] The text of Assembly Bill No. 775 is at ER070.

2

notice requirement governing unlicensed facilities is also subject to, at most, intermediate scrutiny, this alternate requirement satisfies even strict scrutiny, as it is narrowly tailored to meet California's compelling interest in notifying women whether the facility they are utilizing employs licensed medical professionals. Finally, since the Act is a neutral law of general applicability, it does not interfere with Plaintiffs' free exercise rights. As Plaintiffs failed to show a likelihood of success on the merits and cannot show the balance of equities tips in their favor, they were not entitled to a preliminary injunction. This Court should affirm the decision below.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's order denying the motion for preliminary injunction.

## STATEMENT OF ISSUES

Whether the district court abused its discretion when it denied Plaintiffs' motion for preliminary injunction based on its determinations that:

1. The notice requirement applicable to licensed facilities is a regulation of professional conduct subject to rational basis review, and it survives that review;

3

2. To whatever extent the notice requirement applicable to licensed facilities affects speech, it is a permissible regulation of professional speech, given that it affects pregnancy-related medical clinics licensed by the California Department of Public Health;

3. The notice requirement applicable to unlicensed facilities, regardless of how it is classified, survives any level of free-speech scrutiny;

4. The Act is a neutral law of general applicability that is permissible under the Free Exercise Clause; and

5. The public interest weighs against the injunctive relief Plaintiffs seek.

## STATEMENT UNDER CIRCUIT RULE 28-2.7

The text of the Act appears in the addendum of this answering brief.

## STATEMENT OF THE CASE

## I.   THE REPRODUCTIVE FACT ACT

The California Legislature passed AB 775 on October 9, 2015, based on findings that all California women, regardless of income, should have access to reproductive health care services; that many women are unaware of the free or low cost public programs available to provide them with such services; and that women need to be notified of those resources as soon as

4

possible because pregnancy decisions are time-sensitive. Assem. Bill No. 775, § 1(a)-(d). According to the legislative findings:

> In 2012, more than 2.6 million California women were in need of publicly funded family planning services. More than 700,000 California women become pregnant every year and one half of these pregnancies are unintended. Yet, at the moment they learn that they are pregnant, thousands of women remain unaware of the public programs available to provide them with contraception, health education and counseling, family planning, prenatal care, abortion, or delivery.

*Id.*

The Act's legislative history also describes numerous licensed and unlicensed crisis pregnancy centers operating in California "whose goal is to interfere with women's ability to be fully informed and exercise their reproductive rights" while posing as full-service women's health clinics. Assem. Comm. on Health, Analysis of Assembly Bill No. 775, at 3. The centers' principal aim is to discourage or prevent women from seeking abortions, and some do so through "intentionally deceptive advertising and counseling practices [that] often confuse, misinform, and even intimidate women from making fully-informed, time-sensitive decisions about critical health care." *Id.*

To address this conduct, and to fulfill the Legislature's goal to inform women of these resources in a timely manner, AB 775 imposes two notice

5

requirements upon clinics that provide pregnancy-related services. One applies to any clinic that is a "licensed covered facility," and the other applies to any "unlicensed covered facility." *See* Cal. Health & Safety Code § 123471(a) & (b).[3] This case implicates both of these requirements.[4]

## A. Notice Requirement Applicable to Licensed Facilities

Under the Act, a "licensed covered facility" is one "licensed under Section 1204 or an intermittent clinic operating under a primary care clinic pursuant to subdivision (h) of Section 1206, whose primary purpose is providing family planning or pregnancy-related services, and that satisfies two or more" of the criteria specified in the Act.[5] § 123471(a). Those criteria include:

---

[3] All further statutory references are to the California Health and Safety Code unless otherwise indicated.

[4] In this way, this case differs from *LivingWell Medical Clinic, et al. v. Kamala Harris, et al.* (9th Cir. 15-17497) (N.D. Cal 4:15-cv-04939-JSW) and *A Woman's Friend Pregnancy Resource Clinic, et al. v. Harris*, (9th Cir. 15-17517) (E.D. Cal. 2:15-cv-02122-KJM-AC), both of which involve licensed facilities only. Oral argument in *LivingWell* and *A Woman's Friend* is scheduled for June 14, 2016.

[5] Section 1204 pertains to primary care "community clinics" and primary care "free clinics," § 1204(a)(1), as well as "specialty clinics," § 1204(b). Section 1206(h) refers to "[a] clinic that is operated by a primary care community or free clinic" but that is operated on separate premises and is only open for limited hours (i.e., intermittently). As discussed further

(continued...)

6

(1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women.

(2) The facility provides, or offers counseling about, contraception or contraceptive methods.

(3) The facility offers pregnancy testing or pregnancy diagnosis.

(4) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.

(5) The facility offers abortion services.

(6) The facility has staff or volunteers who collect health information from clients.

*Id.*[6]

Under the Act "a licensed covered facility shall disseminate to clients

on site" the following notice:

California has public programs that provide immediate free or low cost access to comprehensive family planning services

―――――――――――――――

(…continued)
below, the licensed facility in this case—Pregnancy Care Clinic—"is a facility licensed as a primary care clinic under Section 1204." ER044.

[6] As a general matter, for a primary care clinic to be licensed in California, it must provide diagnostic, therapeutic, radiological, laboratory, or other services for the care and treatment of patients in the clinic, or it must arrange for such services with other licensed, certified, or registered providers. Cal. Code Regs. tit. 22, § 75026. Additionally, "[e]very medical clinic shall have a licensed physician designated as the professional director," and "[a] physician, physician's assistant or a registered nurse shall be present whenever medical services are provided." *Id.* § 75027(a) & (d).

7

(including all FDA-approved methods of contraception),
prenatal care, and abortion for eligible women. To determine
whether you qualify, contact the county social services office at
[insert the telephone number].

§ 123472(a)(1).

The notice for licensed facilities must be disclosed in one of three

ways: as a public notice posted at the facility, as a printed notice distributed

to a patient at any time during her visit, or as a digital notice to be read by

clients upon arrival. § 123472(a)(2)(A)-(C). The Legislature determined

that:

> The most effective way to ensure that women quickly
> obtain the information and services they need to make
> and implement timely reproductive decisions is to
> ensure licensed health care facilities that are unable to
> immediately enroll patients into the [Family Planning,
> Access, Care, and Treatment Program (PACT)] and
> Medi-Cal programs advise each patient at the time of
> her visit of the various publicly funded family planning
> and pregnancy-related resources available in California
> and the manner in which to directly and efficiently
> access those resources.

Assem. Bill No. 775, § 1(d).

**B.    Notice Requirement Applicable to Unlicensed Facilities**

An "unlicensed covered facility" is one "that is not licensed by the

State of California and does not have a licensed medical provider on staff or

under contract who provides or directly supervises the provision of all of the

8

services, whose primary purpose is providing pregnancy-related services, and that satisfies two or more" of certain other criteria. § 123471(a). Those criteria, which are a subset of the criteria applicable to licensed facilities, include:

> (1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women.
>
> (2) The facility offers pregnancy testing or pregnancy diagnosis.
>
> (3) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.
>
> (4) The facility has staff or volunteers who collect health information from clients.

*Id.*

Under the Act, an unlicensed covered facility "shall disseminate to clients on site and in any print and digital advertising materials including Internet Web sites" the following notice:

> This facility is not licensed as a medical facility by the State of California and has no licensed medical provider who provides or directly supervises the provision of services.

§ 123472(b)(1). The Act includes requirements to ensure that the notice for unlicensed facilities is posted clearly and conspicuously.

§ 123472(b)(2)-(3).

9

### C.   Civil Penalty and Enforcement Provisions

Covered facilities that fail to comply with the requirements "are liable for a civil penalty of five hundred dollars ($500) for a first offense and one thousand dollars ($1,000) for each subsequent offense." § 123473(a). Under the Act, "[t]he Attorney General, city attorney, or county counsel may bring an action to impose a civil penalty," but only after doing both of the following:

> (1) Providing the covered facility with reasonable notice of noncompliance, which informs the facility that it is subject to a civil penalty if it does not correct the violation within 30 days from the date the notice is sent to the facility.

> (2) Verifying that the violation was not corrected within the 30-day period described in paragraph (1).

§ 123473(a) (1)-(2).

## II.   PROCEDURAL HISTORY

### A.   Plaintiffs File Suit Challenging the Reproductive FACT Act.

Plaintiffs filed their complaint challenging AB 775 within days of its enactment. ER033. Soon thereafter Plaintiffs filed their motion for preliminary injunction, which the parties fully briefed.[7]

_____

[7] In addition to opposing the preliminary injunction motion, the Attorney General and Governor filed motions to dismiss. The parties

(continued…)

10

**B. The Parties**

**1. Plaintiffs**

This case includes three plaintiffs. According to the complaint, they all "seek to provide help and pro-life information to women in unplanned pregnancies so that they will be supported in choosing to give birth, and practical medical or non-medical support free of charge in support of Plaintiffs' pro-life viewpoint." ER034.[8] Plaintiffs oppose the application of the Act to them and have stated an intention not to comply with the Act. ER051.

National Institute of Family and Life Advocates (NIFLA) is "a religious not-for-profit corporation" from Virginia. ER037. NIFLA describes itself as "a national non-profit pro-life membership organization" comprised of member "pregnancy centers" throughout the country, including 111 in California. ER034 & ER037. NIFLA claims that those centers "provide medical or non-medical information and services without charge to

_____

(…continued)
separately briefed those motions, and as of the filing of this answering brief, those motions remain under submission in the district court.

   [8] Plaintiffs did not supply any declarations supporting their motion for preliminary injunction, relying only on the allegations of the verified complaint, which the district court considered. ER003 n.2.

their clients." ER037. In particular, "[s]eventy-three of NIFLA's California members provide licensed medical services, while thirty-eight provide only non-medical services." *Id*.

The other two plaintiffs are clinics. Plaintiff Pregnancy Care Clinic is "a religious not-for-profit corporation" in California. ER037. It claims to "provide[] pregnancy-related licensed medical as well as nonmedical information and services without charge to its clients" under the supervision of an executive director and "in furtherance of its religious beliefs." *Id*. Pregnancy Care Clinic is licensed by the California Department of Public Health to provide health services as a primary care clinic under section 1204. ER037 & ER044. Medical services provided by Pregnancy Care Clinic include "urine pregnancy testing, ultrasound examinations, medical referrals, prenatal vitamins, information on STDs, information on natural family planning, health provider consultation, and other clinical services." ER039. Non-medical services include "peer counseling and education, emotional support, maternity clothes, baby supplies, support groups, and healthy family support." ER040.

Plaintiff Fallbrook Pregnancy Center is also "a religious not-for-profit corporation" in California. ER038. It is an unlicensed facility. ER035. More specifically, Fallbrook states that it "provides pregnancy-related non-

12

medical information and services without charge to its clients," also under the supervision of an executive director and "in furtherance of its religious beliefs." ER038. Such non-medical services include "free pregnancy test kits that women administer and diagnose themselves, educational programs, resources and community referrals, maternity clothes, and baby items." ER040. Fallbrook also states that it "contracts with a separate organization that is a licensed medical provider of ultrasound services" and that it "refers women to that provider's separate mobile facility located nearby." *Id.*

### 2. Defendants

Defendants-Appellees (Defendants) include two state officials and two local officials, all sued in their official capacities only.

Defendant Kamala D. Harris is the Attorney General for the State of California. According to the complaint, "[s]he is responsible under the Act for enforcing its provisions against entities in violation thereof including the Plaintiffs and NIFLA's California Members." ER038.

Defendant Edmund G. Brown Jr. is the Governor of the State of California. Plaintiffs have sued him based on the allegation that "[h]e is the chief executive of the State of California and is responsible for funds that the

13

state has received from the federal government subjecting it to 42 U.S.C. § 238n."[9]   ER038-39

With respect to the local defendants, Defendant Thomas Montgomery is the County Counsel for San Diego County. He is alleged to enforce the Act "against entities in violation thereof in San Diego County, including the Plaintiff facilities and NIFLA's California Members in San Diego County." ER038. Defendant Morgan Foley is the City Attorney for the City of El Cajon. Plaintiffs assert that "[h]e is responsible under the Act for enforcing its provisions against entities in violation thereof in El Cajon, including the Plaintiff facilities and NIFLA's California Members in El Cajon." *Id*.

### C.   Plaintiffs' Claims

The complaint alleges five claims for relief under 42 U.S.C. § 1983. However, Plaintiffs advanced only two of those claims—the federal free speech and free exercise claims—in connection with their motion for preliminary injunction. Accordingly, those are the only claims at issue in this appeal.

---

[9] Generally speaking, 42 U.S.C. section 238n prohibits discrimination against individuals who refuse to perform abortions. The provision is relevant to Governor Brown's motion to dismiss on the basis of the Eleventh Amendment as he has no role in the enforcement of the Act. As mentioned above, that motion to dismiss remains under submission in the district court.

Plaintiffs' free speech claim is that the Act violates their "right to refuse to speak a government-dictated message." ER054. This can be characterized as a "compelled speech" claim. Plaintiffs allege that "[t]he Act unconstitutionally forces Plaintiff Facilities, on pain of government penalty, to engage in government disclaimers that Plaintiff Facilities would not otherwise recite, that undermine Plaintiff Facilities' message, and that contradict Plaintiff Facilities' viewpoint from which they speak." ER054-55.

The free exercise claim is that the Act "substantially burdens the exercise of religious beliefs of Plaintiff Facilities, undermining their pro-life message and the way in which they promote that message in pursuit of their religious beliefs." ER059. [10]

In relevant part, the complaint requests a declaration that the Act is unconstitutional both on its face and as applied to Plaintiffs, along with a permanent injunction against enforcement of the Act. ER063.

---

[10] The three claims not covered by the preliminary injunction motion (and hence not at issue in this appeal) include (1) a vagueness claim regarding the phrase "unlicensed covered facility"; (2) a federal statutory claim seeking the disgorgement of certain federal funds under 42 U.S.C. § 238n; and (3) a claim that the Act violates the Free Speech Clause of the California Constitution.

15

**D.   The District Court Denied Plaintiffs' Motion for Preliminary Injunction.**

After briefing and oral argument, the district court issued a nineteen-page order denying Plaintiffs' motion for a preliminary injunction. [11]

On the free speech claim, the district court found that Plaintiffs failed to demonstrate a likelihood of success on the merits.

Considering the Act's requirements for licensed facilities, the court held that "the providers' action in informing patients of their treatment options is professional conduct subject to rational basis review" under this Court's decision in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014).  ER012. The court explained that "[t]he state clearly has a legitimate interest in ensuring pregnant woman are fully advised of their rights and treatment options when making reproductive health care decisions and the required disclosure is undeniably rationally related to that interest."  ER012-13.  The court further reasoned that, to the extent "speech is implicated, … the Act regulates professional speech."  ER013.  When classified as professional speech, "the Act survives intermediate scrutiny."  ER014.  The court

---

[11] Along with denying the motion for preliminary injunction, the district court rejected Defendants' argument that the case was not ripe for judicial review.  The Attorney General and Governor do not challenge the district court's ripeness determination on appeal.

16

reasoned, in relevant part, that "[t]he Act's disclosure requirement directly advances the government's substantial interest in ensuring pregnant women are fully advised of their rights and available services when making reproductive health care decisions." *Id*. [12]

Turning to the Act's requirements for unlicensed facilities, the court concluded that the relevant notice requirement "withstands any level of scrutiny." ER015. The court reasoned that "[t]he state's interest in ensuring pregnant women know when they are receiving medical care from licensed profession[als] and when they are not is compelling." *Id*. Additionally, because the Act "merely requires a notice that a facility is not licensed and has no licensed medical provider on staff" the court determined that the Act "is narrowly tailored to achieve that compelling interest." *Id*.

The court similarly concluded that Plaintiffs failed to demonstrate a likelihood of success on the merits of their free exercise claim. The court determined that the Act is "neutral," explaining that "[t]he object of the Act is to ensure pregnant women are fully informed of their health care options and when they are obtaining treatment from licensed providers." ER016-17.

---

[12] Indeed, in light of the compelling interest and narrow tailoring involved, the Court found that the Act as a whole survives even "strict scrutiny." ER017.

17

The court also concluded that the Act is "generally applicable," finding that "there is no evidence to suggest the Act burdens only conduct motivated by religious belief." ER017. As a result, the court held, the law was subject to (and easily passed) rational basis review. In any event, the court further concluded that "the Act survives not only rational basis but strict scrutiny review." *Id.*

With respect to the remaining prongs of the preliminary injunction test, the district court found that Plaintiffs "fail[ed] to demonstrate irreparable harm," and that "the balance of hardships tips in favor of the state, city and county and the interest in protecting its citizens." ER018.

## STANDARD OF REVIEW

Review of an order denying a motion for preliminary injunction is "limited and deferential;" the order will be affirmed absent an abuse of discretion. *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam). Thus, when the district court applies the correct legal rule to the relief requested, this Court should reverse "only when the district court reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record." *N.D. ex rel. Parents Acting as Guardian Ad Litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1111 (9th Cir. 2010). This Court should not reverse the district

18

court simply because it "would have arrived at a different result if it had applied the law to the facts of the case." *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir. 1982). The Court may affirm the denial of a preliminary injunction "on any ground supported by the record." *Big Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085, 1088 (9th Cir. 1989).

## SUMMARY OF ARGUMENT

The district court correctly denied Plaintiffs' motion for a preliminary injunction based on its determination that Plaintiffs are not likely to succeed on the merits of their First Amendment claims, that the balance of equities do not tip in their favor, and that an injunction is not in the public interest.

In determining that Plaintiffs were unlikely to prevail on their free speech claim, the district court correctly determined that the Act's licensed facilities notice requirement concerns professional conduct, not speech. In the alternative, the court correctly found that the requirement constitutes a permissible regulation of professional speech, imposed in the context of a professional relationship that is subject to the state's regulation as a function of licensure. Though the district court did not address the issue, the licensed facilities notice is also a permissible regulation of commercial speech.

19

With respect to the unlicensed facilities notice requirement, and regardless of how that requirement might be classified, the district court correctly found that it survives any conceivable level of review.

The district court also correctly found Plaintiffs unlikely to prevail on their free exercise claim, because the Act is operationally neutral and generally applicable to covered facilities.

Finally, the district court did not abuse its discretion in weighing the equities and concluding that the public interest does not weigh in favor of injunctive relief. Enjoining the Act would have harmed large numbers of California women who "are in need of publicly funded family planning services, contraception services and education, abortion services, and prenatal care and delivery," but are unaware of the public programs available to provide them with those vital services. Assem. Bill No. 775, § 1(b). It would have prevented those women in California who seek pregnancy-related goods and services from Plaintiffs, or other pregnancy clinics, from receiving a full range of truthful information necessary to make informed decisions about their medical care. And it would have left California women subject to deceptive and misleading practices.

Accordingly, this Court should affirm the district court's order.

20

# ARGUMENT

## I. PLAINTIFFS FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR FREE SPEECH CLAIM.

The notice requirement applicable to licensed facilities and the one applicable to unlicensed facilities are each constitutional. The district court accordingly did not abuse its discretion in concluding that Plaintiffs were unlikely to prevail on the merits of their free speech claims.

### A. The Notice Requirement Applicable to Licensed Facilities is Constitutional.

In *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), this Court articulated the proper framework for analyzing the notice requirement applicable to licensed facilities. In rejecting a First Amendment challenge to California's statute banning licensed mental health providers from administering Sexual Orientation Change Effort therapy to child patients, the Court discussed a sliding scale for restrictions imposed on licensed health care professionals. As the Court explained, where the professional "is engaged in a public dialogue" via public advocacy, "First Amendment protection is at its greatest." *Pickup*, 740 F.3d at 1227. By contrast, "[a]t the midpoint of the continuum, within the confines of a professional relationship, First Amendment protection of a professional's speech is

21

somewhat diminished." *Id*. at 1228 (citing *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 882 (1992) as upholding a requirement that doctors disclose "truthful, nonmisleading information about the nature of the procedure"). Finally, in the "regulation of professional conduct," the "state's power is great, even though such regulation may have an incidental effect on speech." *Id*. at 1229.[13] Although the district court correctly concluded that the licensed facilities notice requirement regulates professional conduct, not speech, even if the requirement is analyzed at the "midpoint" of the Pickup continuum, it satisfies the First Amendment.

_____

[13] Plaintiffs implicitly question whether *Pickup* remains good law in light of the Supreme Court's decision in *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). Appellants' Brief, at 35 n.2. But *Reed* had nothing to do with the regulation of professional conduct or speech within a doctor-patient relationship; *Reed* concerned restrictions on signs and billboards aimed at the general public. *Reed* casts no doubt on precedents holding that the First Amendment permits the state leeway to regulate professionals to protect the health and general welfare of its citizens, even where the state's regulation has an incidental effect on protected speech. *See, e.g., Casey*, 505 U.S. at 881-84. Indeed, California's Act, which does not require that covered professionals or facilities communicate any particular view on the desirability or consequences of any particular reproductive choice, imposes far less of a burden on free speech than did the speech requirements upheld in *Casey*. *Id*.

22

1.   **The district court correctly concluded that the Act regulates professional conduct**

As an initial matter, the Defendants maintain that the district court correctly concluded that the licensed facilities notice requirement regulates professional conduct, not speech, under this Court's decision in *Pickup*, in which the Court concluded that California's ban on sexual orientation change effort therapy was permissible as a regulation of licensed professionals' conduct. The district court reasoned, in relevant part, that the Act does not ban speech or "prohibit Plaintiffs from discussing their message with patients." ER012. On the contrary, "the Act requires medical providers to advise their patients of various types of treatment available so patients are fully informed when making decisions regarding their pregnancies." *Id*. It also "permits discussion about treatment and expressing opinions including their messages regarding abortion." *Id*. *See Pickup*, 740 F.3d at 1230 (law was permissible conduct regulation because it "does not restrain Plaintiffs from imparting information or disseminating opinions"). Thus, the district correctly determined that, like the law in *Pickup*, the Act is "subject to only rational basis review and must be upheld if it bears a rational relationship to a legitimate state interest." *Id*. (citing *Casey*, 505

23

U.S. at 884, 967-68 as applying reasonableness standard to regulation of medicine where speech may be implicated incidentally).

Nevertheless, the Court need not reach this particular issue, because even if the Act has any effect on speech, it is permissible under the intermediate scrutiny test that applies to regulations of professional speech, as the district court correctly held in the alternative. Additionally, the notice requirement is also a permissible regulation of commercial speech.

> **2. To the extent the notice affects speech, it is a permissible regulation under the professional speech doctrine.**

The district court correctly concluded that the notice requirement should be upheld even if located at the mid-point of the Pickup continuum because it concerns the provision of medical services by a licensed clinic "within the confines of a professional relationship." *Pickup*, 740 F.3d at 1228; see also *King v. Governor of the State of New Jersey*, 767 F.3d 216, 232-235 (2014) (departing from *Pickup's* analysis of sexual orientation change therapy as conduct rather than professional speech but agreeing that state regulation of professional speech is subject to intermediate scrutiny if it advances client protection). As this Court explained in *Pickup*, "a state enjoys considerable latitude to regulate the conduct of its licensed health care professionals in administering treatment." 740 F.3d at 1230. The

24

district court correctly applied intermediate scrutiny to conclude that
Plaintiffs were unlikely to show any violation of their free speech rights.

### a. The notice is provided in the context of a professional relationship.

Under its police power, the State may regulate medical professions.
*See, e.g., Gonzales v. Carhart*, 550 U.S. 124, 157 (2007) (state has
significant role in regulating medical profession); *Pickup*, 740 F.3d at 1229
(under its police power, state has authority to regulate licensed health
providers' administration of therapies). The First Amendment allows
leeway to regulate professionals to protect the health and general welfare of
its citizens, even where the state's regulation has an incidental effect on
protected speech. *See, e.g., Casey*, 505 U.S. at 881-84; *Shea v. Bd. of Med.
Examiners*, 81 Cal. App. 3d 564, 577 (1978). When professionals, by virtue
of their state-issued licenses, form relationships with clients or patients, the
purpose of those relationships is to advance the interest and welfare of the
client or patient, rather than to contribute to a public debate. *See Pickup*,
740 F.3d at 1228-29. It is regulatory oversight that provides clients with the
confidence to put their health in the hands of medical professionals. *See
King*, 767 F.3d at 232.

25

Here, the relevant Plaintiffs are licensed and regulated by the
Department of Public Health pursuant to California's Health & Safety Code.
Such clinics must provide certain services, must have a licensed physician
designated as the clinic's medical director, and for certain enumerated
medical procedures, must have a medical professional present. *See* Cal.
Code Regs. tit. 22, §§ 75026 & 75027(a) & (d). These and other forms of
state regulation of such clinics are routine and expected by those who seek
medical services. California has the authority to regulate licensed pregnancy
centers so that California women are adequately informed of free and low
cost family planning and reproductive health care services in a timely and
effective manner. *See Shea*, 81 Cal. App. 3d at 577 (state has right to
require licensed medical professionals be "reliable, trustworthy, and not
given to deception of the public"); *see also Mann v. Bd. of Med. Examiners
of the State*, 31 Cal. 2d 30, 41 (1947) (state has "plenary power" to regulate
practice of medicine).

Plaintiffs accept responsibility for providing medically-supervised
treatment for patients pursuant to their California licenses, and the notice is
simply a requirement to providing that care in addition to the requirements
identified above. The notice is required only in the context of the provision
of services to women seeking professional medical attention from licensed

26

medical providers. Accordingly, the district court did not abuse its discretion in finding that the notice is a permissible regulation of professional speech.

Plaintiffs contend that the Act cannot be a professional speech regulation because the notice is delivered to a woman before she meets a doctor or nurse—for instance, because the notice may be seen in the waiting room or "as soon as someone walks in the door." Appellants' Brief at 32. Of course, it is up to Plaintiffs to decide whether they wish to provide the required written disclosure to patients in the waiting room or later in the course of a physician examination. If Plaintiffs believe it would be less burdensome for the clinic's licensed physician to provide the disclosure to each woman, there is nothing in the Act preventing them from doing so. Moreover, the Act applies to a "licensed covered facility," as opposed to an individual medical provider. § 123471(a). Thus, it is not dispositive for First Amendment purposes whether the disclosure is provided directly by a physician, as opposed to some other facility staff person. The very fact that licensed covered facilities are required to have a California-licensed physician as a "professional director" (*see* p. 7, n.6, *supra*) indicates that the facility's operations (including the provision of the notice) are controlled (i.e., directed) by a physician subject to California's professional regulations.

27

Plaintiffs also object that the notice cannot be connected to professional speech because it would be viewed even by women who visit their medical facilities simply "to get free baby clothes." Appellants' Brief at 39. It is not clear, as a factual matter, that the waiting room notice would indeed be visible to such women. In any case, that Plaintiffs happen to provide basic maternity and baby items does not change their character as licensed medical facilities—just as the presence of a gift shop or cafeteria does not negate the State's authority to regulate a hospital. And the fact that some people who are not clients seeking professional services at the licensed clinics may happen to view a required notice does not raise a First Amendment bar to requiring such notices for the benefit of clients who do seek professional services. This is why the State may, for instance, require pharmacists to post notices alerting their patients as to important information, notwithstanding the notice will be visible not only to patients purchasing prescription drugs but also to delivery personnel, cleaning staff, and those buying other goods. *See* Cal. Business & Prof. Code § 4122(a) (requiring pharmacies to publicly post notice regarding, among other things, "the availability of prescription price information" and "the possibility of generic drug product selection"); Cal. Code. Reg. tit. 16, § 1707.6 (requiring public notice about availability

28

of interpreter services and about customer's right to receive large-font drug labels).

### b. The court applied intermediate scrutiny correctly in its professional speech analysis.

The district court correctly applied intermediate scrutiny in analyzing the notice as a regulation of professional speech. To survive intermediate scrutiny, the Act's notice provision must directly advance a substantial governmental interest and be drawn to achieve that interest. *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 at 2667-68 (2011). "There must be a fit between the Legislature's ends and the means chosen to accomplish those ends." *Id.* at 2668 (citation and quotation marks omitted). This level of scrutiny seeks to ensure "not only that the State's interests are proportional to the resulting burdens placed on speech but also that the law does not seek to suppress a disfavored message." *Id.*

The stated purpose of the Act is to ensure California women know their reproductive rights, and the healthcare resources available to them, when they make their personal reproductive healthcare decisions. ER071. "The State has a strong interest in protecting a woman's freedom to seek medical and counseling services in connection with her pregnancy." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767 (1994). The Federal

29

Affordable Care Act has made millions of Californians—53 percent of them women—newly eligible for the Medi-Cal program. Assem. Comm. on Health, Analysis of Assembly Bill No. 775, at 3. More than 700,000 California women become pregnant each year, and approximately half of those pregnancies are unintentional. AB 775, § 1. The Legislature found that thousands of California women remain unaware of the public health programs available to them through Medi-Cal. *Id*. It also understood that "intentionally deceptive advertising and counseling practices often confuse, misinform, and even intimidate women" seeking reproductive health care. Assem. Comm. on Health, Analysis of Assembly Bill No. 775, at 3. Accordingly, the Legislature correctly recognized that the State's interests in combating deception and ensuring that California women receive accurate and timely information about healthcare services are not only substantial, but compelling.

The district court correctly determined that the Act's notice provision is carefully drawn and directly advances California's interest in informing women of the availability of free or low cost health care resources and the manner in which they may access those resources. ER014. The incontrovertible information contained in the notice is no more than a neutral list of reproductive health care services available. And the inclusion of the

30

telephone number for the local county services office provides women with a direct and efficient method of accessing the government agency that will enable them to take advantage of those services. The notice goes no further than necessary to meet these important goals.

Nor may it be argued that the Act cannot survive intermediate scrutiny because the notice provisions are too broadly drawn to combat deceptive practices by some crisis pregnancy centers. Legislative findings demonstrate that despite their professional obligations, some centers are unwilling to provide incontrovertibly truthful information to their patients that is relevant to fully-informed medical decision making. ER086-87. The deception is especially harmful, because of the time-sensitive nature of reproductive healthcare decisions. ER070-72. The Act addresses such findings narrowly by limiting the notice to truthful, incontrovertible information, and provides facilities with alternatives as to the time and manner of delivery. *Cf. Stuart v. Camnitz*, 774 F.3d 238, 252 (4th Cir. 2014) (holding provision of North Carolina's Woman's Right to Know Act requiring physicians to perform ultrasound, display sonogram, and describe fetus to women seeking abortions failed to satisfy intermediate scrutiny because disclosure could not be "divorce[d] … from its moral or ideological

31

implications" and was required at moment "when the intended recipient is most vulnerable"—partially unrobed and shortly before time of decision).

Finally, Plaintiffs argue that the licensed facilities notice requirement fails to satisfy intermediate scrutiny under *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir.) *cert. denied sub nom. Evergreen Ass'n, Inc. v. City of New York*, 135 S. Ct. 435 (2014) *and cert. denied sub nom. Pregnancy Care Ctr. of New York v. City of New York*, 135 S. Ct. 435 (2014). However, the laws at issue in that case—which included a provision requiring pregnancy centers to make a disclosure regarding available services, including abortion, emergency contraception, and prenatal care—were directed at unlicensed facilities, as opposed to licensed ones. *See Evergreen*, 740 F.3d at 239 ("the law exempts from its provisions facilities that are 'licensed … to provide medical or pharmaceutical services' or have a licensed medical provider on staff). Thus, *Evergreen* is inapposite when evaluating the Act's notice requirement applicable to licensed facilities.[14]

---

[14] In contrast, *Evergreen* is persuasive with respect to the notice requirement applicable to *unlicensed* facilities, as discussed below. *See* pp. 31-32, *infra*.

32

### 3. The notice is a permissible regulation of commercial speech.

Although the district court did not reach the issue, the commercial speech doctrine provides an independent basis on which to conclude Plaintiffs have not met their burden to demonstrate a likelihood of success on the merits. *See Big Country Foods*, 868 F.2d at 1088 (court may affirm denial of preliminary injunction "on any ground supported by the record"). The Constitution accords the government greater deference to regulate commercial speech, relative to other safeguarded forms of expression, because such speech "occurs in an area traditionally subject to government regulation." *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 562 (1980). This is especially true when the government action is intended to increase, rather than restrict, the free flow of accurate information to consumers. *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 646 (1985). For that reason, although restrictions on commercial speech are generally subject to intermediate scrutiny, *Central Hudson*, 447 U.S. at 563-66, the Supreme Court has applied rational basis review where the challenged law compels the disclosure of only factual and uncontroversial information, *Zauderer*, 471 U.S. at 651. This deference benefits the consumer, whose interest in the

33

free flow of commercial information may be as keen "if not keener by far, than his interest in the day's most urgent political debate." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 763 (1976); *see Zauderer*, 471 U.S. at 646 (1985).

### a. Any speech by Plaintiffs is at most commercial speech.

Under the governing test from *Bolger v. Youngs Drug Products Corp*, 463 U.S. 60 (1983), three factors are relevant when determining whether speech may be characterized as commercial: (1) whether the speech is admittedly advertising; (2) whether the speech references a specific product or service; and (3) whether the speaker has an economic motive for engaging in the speech. *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004) (citing *Bolger*, 463 U.S. at 66-67.) It is not necessary that each of the characteristics "be present in order for speech to be commercial," *Bolger*, 463 U.S. at 67 n.14, although "[t]he combination of all of these characteristics … provides strong support for the … conclusion that [the speech is] properly characterized as commercial speech," *id*. at 67.

The first *Bolger* factor raises no bar to the speech at issue here being treated as commercial speech. Courts commonly apply the commercial speech doctrine to speech that is not traditional advertising, on the basis that

34

"the precise form of the speech does not determine whether it qualifies as 'commercial speech.'" *National Ass'n of Manufacturers v. S.E.C.*, 800 F.3d 518, 534-35 (D.C. Cir. 2015) (corrective disclosures on corporate websites are commercial speech); *see also United States v. Philip Morris USA, Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) (per curiam) (similar); *Riley v. National Federation of the Blind of North Carolina, Inc.* (1988) 487 U.S. 781, 796 (assuming, without deciding, that economically-motivated speech outside context of advertising may qualify as commercial speech). As the District of Columbia Circuit has explained, commercial speech "'include[s] material representations about the efficacy, safety, and quality of the advertiser's product, and other information asserted for the purpose of persuading the public to purchase' (or, given the corrective disclosures at issue, not to purchase) 'the product.'" *National Ass'n of Manufacturers*, 800 F.3d at 535 (quoting *Philip Morris USA*, 566 F.3d at 1095). The fact that the Act's disclosures need not occur in the course of traditional advertising thus is not dispositive because the required disclosures occur at the location and approximate time when Plaintiffs are providing or about to provide their services to clients.

Next, the second *Bolger* factor is satisfied. The Act's disclosure references specific reproductive health services. § 123472(a)(1).

35

Additionally, Plaintiffs acknowledge that they advertise to prospective patients a variety of related commercial goods and services: prenatal sonography, pregnancy tests, pregnancy counseling, and other non-medical services. ER044 & ER048. Thus, the disclosure is likely to be perceived as commercial expression by the women who visit Plaintiffs' clinics. The interests of those women as listeners, as opposed to the interests of the speaker, are of the utmost importance in the commercial speech context. *See Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977) (citing *Bigelow v. Virginia*, 421 U.S. 809 (1975)) (commercial speech "serves individual and societal interests in assuring informed and reliable decisionmaking").

Regarding the third *Bolger* factor, Plaintiffs state that they offer their services free of charge and contend that they have no economic motive for their speech. Even if true, however, this would not be dispositive in analyzing the third factor, as other courts considering this question have concluded.

Plaintiffs have situated themselves in the commercial marketplace. They acknowledge that they advertise to prospective patients a variety of goods and services. ER044 & ER048. The clinic-provided goods and services fulfill their patients' commercial needs and function as substitutes for goods and services that other operators provide in the commercial

36

marketplace. As the Fourth Circuit has reasoned, a speaker's lack of a profit motive cannot be dispositive of the commercial speech question, because "context matters." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Baltimore*, 721 F.3d 264, 286 (4th Cir. 2013). "[T]hat context includes the viewpoint of the listener, for '[c]ommercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information.'" *Id*. at 286 (citing *Central Hudson*, 447 U.S. at 561-62).

Similarly, in *Fargo Women's Health Organization, Inc. v. Larson*, 381 N.W. 2d 176 (N.D. 1986), an argument was made that the advertising of a health clinic that offered its services for free could not be considered commercial speech. *Id*. at 180. The North Dakota Supreme Court acknowledged some uncertainty about whether the clinic was receiving money in exchange for the clinic's services. *Id*. Nonetheless, the court concluded that whether the clinic's services were offered for free was not dispositive of whether the clinic's speech was commercial, because the clinic's advertisements were placed into a commercial context in order to promote the clinic's services and solicit patronage. *Id*. at 181. This is consistent with the general proposition that otherwise commercial activity is not rendered "non-commercial" simply because it is conducted by a non-

37

profit entity. *See, e.g.*, *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 573 (1997) (holding that nonprofit summer camp with religious mission was engaged in commerce for purposes of Commerce Clause analysis); *Virginia Vermiculite, Ltd v. W.R. Grace & Co.-Conn.*, 156 F.3d 535, 541 (4th Cir. 1998) (nonprofit environmental organization engaged in commercial transaction for purposes of antitrust analysis when it accepted donation of commercially valuable land).

> **b.  As commercial speech, the notice is subject to rational basis review because it includes only factual and uncontroversial information.**

The Supreme Court has applied rational basis review where a challenged law compels the disclosure of only factual and uncontroversial information. *Zauderer*, 471 U.S. at 651; *see Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 250 (2010) (rational basis review proper where compelled disclosures "entail only an accurate statement" of advertiser's legal status and character of services provided).

The information that the Reproductive FACT Act requires licensed covered facilities to provide is purely factual and not subject to debate (i.e., it is accurate). *See Nat'l Ass'n of Manufacturers*, 800 F.3d at 537-38 ("To qualify as 'purely factual and uncontroversial' … the disclosed information must in fact be 'factual,' and it must also be 'uncontroversially' so, in the

38

sense that that there could be no 'disagree[ment] with the truth of the facts required to be disclosed.'"). Although people certainly may disagree about whether California law should cover reproductive healthcare services, Plaintiffs do not dispute that California *does* cover those services. Nor do Plaintiffs dispute that particular county health departments can be reached at the phone numbers to be listed in the notice. Indeed, the required disclosure is akin to the type of "accurately and readily determined" facts that would be subject to judicial notice because their accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b)(2); *see, e.g., Matthews v. National Football League Management Council*, 688 F.3d 1107, 1113 (9th Cir. 2012) (taking judicial notice that a particular football team played 13 games in California). The disclosure thus does not raise the sorts of concerns that could be raised regarding required statements of opinion, *United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001), advice on "metaphysical matters," *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds,* 530 F.3d 724, 741 (8th Cir. 2008), or statements taking sides in an expert debate, *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 686 F.3d 889, 900 (8th Cir. 2012) (acknowledging "degree of 'medical and scientific uncertainty'" regarding link between abortion and suicide).

39

Under the rational basis standard, the notice is constitutional because it directly advances the government interest in keeping pregnant women fully informed of their inherently time-sensitive options. Indeed, as discussed above, the statute directly advances important goals in a manner that would allow it to survive intermediate scrutiny as well. *See* pp. 29-32, *supra*. Permitting the State to require such a disclosure is congruent with the overall purposes of the First Amendment and the commercial speech doctrine, since this is not a statute that threatens to inhibit the free flow of information. To the contrary, by ensuring that women receive timely, non-ideological background information relevant to their immediate circumstances, the notice furthers the First Amendment goal of the discovery of truth and contributes to the efficiency of the marketplace of ideas.

Finally, the Reproductive FACT Act is not subject to specially "heightened judicial scrutiny" as a content- and speaker-based restriction on commercial speech. *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664; *see also Retail Digital Network, LLC v. Appelsmith*, 810 F.3d 638, 648 (9th Cir. 2016). In *Sorrell*, Vermont enacted a ban on the sale, disclosure, and use of information that identified physicians and the prescription medications they prescribed to their patients. But the ban was "designed to impose a specific content-based burden" on a particular group of customers (i.e.,

40

pharmaceutical manufacturers). 131 S. Ct. at 2664. It was aimed at preventing those manufacturers from using the information to market their brand-name drugs, while making the information available to almost anyone else. *See id*. at 2668 ("[t]he explicit structure of the statute allows the information to be studied and used by all but a narrow class of disfavored speakers"). That meant both that the law was subject to heightened scrutiny and that it was not appropriately tailored to survive such scrutiny.

Here, by contrast, the Reproductive FACT Act is more general in its application, requiring *all* licensed medical clinics providing pregnancy-related services to provide the pertinent notice. The sole exception—for clinics enrolled as Medi-Cal providers or as providers in the Family PACT program—exists for a good reason. Because those clinics themselves provide such services at public expense, providing the notice to patients already at those clinics would be superfluous. *See* Assem. Comm. on Judiciary, Analysis of Assembly Bill No. 775 at 4, 8-9. [15]

In any case, "heightened scrutiny" under *Sorrell* appears at most to be a requirement for intermediate scrutiny under *Central Hudson*. *See 1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014)

_____

[15] This committee analysis is in the record at ER089.

("The upshot is that when a court determines commercial speech restrictions are content- or speaker-based, it should then assess their constitutionality under *Central Hudson*."); *King*, 767 F.3d at 234, 236-37 (applying *Central Hudson* "intermediate scrutiny" and rejecting argument that *Sorrell* requires more stringent standard of review because restriction was content-based); *Dana's R.R. Supply v. Atty. Gen. Fla.*, 807 F.3d 1235, 1246 (11th Cir. 2015) (applying intermediate scrutiny as the "heightened scrutiny" demanded under *Sorrell*).[16]   And as discussed above, the Act survives intermediate scrutiny.

### B. The Notice Requirement Applicable to Unlicensed Facilities Is Constitutional.

#### 1. The notice is a permissible regulation of commercial speech.

Plaintiffs also challenge the notice requirement applicable to unlicensed facilities. But that requirement simply directs the unlicensed covered facility to disseminate a short, neutral statement advising of its status as a facility

---

[16] To the extent this Court implied, in *Retail Digital Network, LLC v. Appelsmith*, 810 F.3d 638 (9th Cir. 2016), that *Sorrell* might demand that content-based or speaker-based commercial speech regulations be evaluated under some level of scrutiny higher than *Central Hudson* intermediate scrutiny, it is worth noting that *Retail Digital* made clear that any such scrutiny would be less demanding than "strict scrutiny." *Id.* at 648-49. Moreover, a petition for rehearing in *Retail Digital* is currently pending, and the Court has ordered a response.

not licensed as a medical facility by the State of California. § 123472(b)(1).

Thus, and even though the district court did not address the issue,

Defendants maintain that the requirement is at most a commercial speech

regulation subject to rational basis review, which it easily survives. *See*

*United States v. Pantojas-Cruz*, 800 F.3d 54, 55 (1st Cir. 2015) (stating that

in *Zauderer* "[t]he Supreme Court stated that rational basis review applies to

certain disclosures of 'purely factual and uncontroversial information'");

King, 767 at 236 (stating that *Zauderer* "outlin[ed] the 'material differences

between disclosure requirements and outright prohibitions on speech' and

subject[ed] a disclosure requirement to rational basis review").

    Under the relevant *Bolger* factors, the notice requirement is easily

characterized as commercial speech. First, facilities must disseminate the

relevant notice "to clients on site and in any print and digital advertising

materials including Internet Web sites." § 123472(b)(1). Thus, under the

terms of the Act the notice is admittedly advertising. *See Am. Acad. of Pain

Mgmt.*, 353 F.3d at 1106 (listing *Bolger* factors). Second, the notice

specifically references the services provided at the relevant site: "This

facility is not licensed as a medical facility by the State of California and has

no licensed medical provider *who provides or directly supervises the

provision of services*." *Id.* (italics added). Third, and as discussed above,

43

even assuming Plaintiffs have no economic motive for operating their facilities, that circumstance does not disqualify the notice as commercial speech. *See* pp. 34-38, *supra*.

In context, the notice essentially operates as a corrective disclosure to ensure that women are not misled by non-medical facilities that use the trappings of licensed providers. In *United States v. Philip Morris USA. Inc.*, 566 F.3d 1095 (D.C. Cir. 2009), the court rejected cigarette manufacturers' First Amendment challenges to a district court-ordered remedy requiring them to make corrective statements about the adverse health effects of smoking. *Id.* at 1141-44. At the time of that appeal, the precise content of the disclosure had yet to be determined. So the court of appeal directed the district court on remand to "confine the statements to 'purely factual and uncontroversial information,' … geared towards thwarting prospective efforts by Defendants to either directly mislead consumers or capitalize on their prior deceptions by continuing to advertise in a manner that builds on consumers' existing misperceptions." *Id.* at 1144-45. In light of the subject matter of the disclosure, the court concluded that this would be "a permissible restraint on Defendants' commercial speech." *Id.* at 1145.

Here, the unlicensed facilities notice requirement is akin to such a corrective disclosure. It is designed to prevent a woman from mistakenly

44

concluding that a crisis pregnancy center—which looks like a medical facility because it offers pregnancy testing, prenatal sonography, or pregnancy options counseling, for example, *see* § 123471(a)—is a medical facility, even if the center does not engage in actual deception. It is short, objective, and informational in nature, and directly related to the State's interest in eliminating confusion and misinformation among women seeking reproductive health care. In this way as well, it is a permissible restraint on commercial speech.

### 2. The notice requirement survives any level of scrutiny.

Irrespective of how the unlicensed facilities requirement might be categorized, the district court correctly determined that it withstands any level of review, even strict scrutiny. As the district court found, "[t]he state's interest in ensuring pregnant women know when they are receiving medical care from licensed professions and when they are not is compelling." ER015. This conclusion is consistent with the Second Circuit's recent decision in *Evergreen*. There, the Second Circuit upheld a similar disclosure that "requires pregnancy services centers to disclose whether or not they 'have a licensed medical provider on staff who provides or directly supervises the provision of all of the services at such pregnancy

45

services center.'" *See Evergreen*, 740 F.3d at 246. Like the district court, the Second Circuit found that New York's interest was compelling. *Id*. at 246 ("[P]rotect[ing] public health by promoting unobstructed access to reproductive health facilities" "serves sufficiently compelling governmental interests.") (quoting *Am. Life League, Inc. v. Reno*, 47 F.3d 642, 656 (4th Cir. 1995). The court stated that striking down this "status disclosure" would "deprive the City of its ability to protect the health of its citizens and combat consumer deception in even the most minimal way." *Id*. at 247.

The district court's finding that the Act is the least restrictive means to accomplish California's compelling interest also finds support in *Evergreen*. The Second Circuit there explained that disclosure is the "least restrictive means to ensure that a woman is aware of whether or not a particular pregnancy services center has a licensed medical provider at the time that she first interacts with it. Such a law is required to ensure that women have prompt access to the type of care they seek." 740 F.3d at 247. The court also explained the inadequacy of alternative measures like the ones Plaintiffs allude to here, like government-sponsored advertisements and signs posted outside of pregnancy services centers. Such means "will not accomplish the City's compelling interest. City-sponsored advertisements and signs cannot alert consumers as to whether a particular pregnancy services center

46

employs a licensed medical provider, because, among other things, this is
discrete factual information known only to the particular center." *Id.*

The court in *Evergreen* also rejected the idea—similar to the idea
Plaintiffs advanced below here—that the statute is over-inclusive because
not all pregnancy services centers engage in deception. Like the problem
here, the problem targeted by the City that enacted the ordinance in
*Evergreen* was broader, even though the City "considered deception by
certain [crisis pregnancy centers] in its hearing." 740 F.3d at 247. As the
court explained, the ordinance "seeks to prevent woman from mistakenly
concluding that pregnancy services centers, which look like medical
facilities, are medical facilities, whether or not the centers engage in
deception." *Id.*

Similarly, in *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 189-
90 (4th Cir. 2013), the Fourth Circuit concluded that the district court
properly refused to preliminarily enjoin enforcement of a county ordinance's
requirement that pregnancy centers post a sign stating that no licensed
medical professional was on staff.[17]  The court of appeals agreed with the

_____

[17] As in *Evergreen*, the ordinance in *Centro Tepeyac* applied to
unlicensed facilities. *Centro Tepeyac*, 5 F. Supp. 3d at 748 (explaining
(continued...)

47

district court and determined that a First Amendment challenge to the requirement was unlikely to succeed on the merits because the requirement served the county's compelling interest in "preserving public health." *Id.* at 189. Furthermore, the requirement was narrowly tailored because it "merely notifies patients 'that a licensed medical professional is not on staff,' 'does not require any other specific message,' and 'in neutral language states the truth.'" *Id.* at 190; *see also Riley v. National Federation of the Blind of North Carolina, Inc.* (1988) 487 U.S. 781, 799 n.11 ("[N]othing in this opinion should be taken to suggest that the State may not require a fundraiser to disclose unambiguously his or her professional status. On the contrary, such a narrowly tailored requirement would withstand First Amendment scrutiny.").

Like the disclosures upheld by the Second and Fourth Circuits, the notice requirement applicable to unlicensed facilities advances the compelling interest of ensuring that pregnant women in California know when they are getting medical care from licensed professionals, and when they are not. *See* Assem. Bill No. 775, § 1(e) (declaring that it is "vital that

_____

(…continued)
"Limited Service Pregnancy Resource Centers" defined, in relevant part, as "not hav[ing] a licensed medical professional on staff").

48

pregnant women in California know when they are getting medical care from licensed professionals"); Assem. Com. on Health, Analysis of Assembly Bill No. 775 (2015-2016 Reg. Sess.) May 4, 2015, at 2 (unlicensed facilities notice requirement "enable[es] women to seek the care they wish to obtain and provid[es] context for counseling given at these unlicensed facilities"). It is also narrowly tailored because it is a clear, fact-specific disclosure. It informs patients that services requiring a license will not be available at a particular facility, so that there is no confusion on behalf of the consumer. Finally, like notices upheld in *Evergreen* and *Centro Tepeyac*, the notice here does not compel speech reflecting any viewpoint, belief, or ideology.

Because the notice requirement for unlicensed facilities survives any level of constitutional scrutiny, the district court correctly concluded that there was no likelihood that Plaintiffs would succeed on their challenge to that requirement.

### C. Plaintiffs Failed to Demonstrate a Likelihood of Success on Their Free Exercise Claim.

In determining that Plaintiffs were unlikely to prevail on their free exercise claim, the district court correctly determined that the Act is operationally neutral and generally applicable to covered facilities.

49

A rationally based, neutral law of general applicability does not violate the right to free exercise of religion even where the law incidentally burdens a religious belief or practice. *Employment Division v. Smith*, 494 U.S. 872, 879 (1990); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 (9th Cir. 2015), *petition for cert. filed*, 84 U.S.L.W. 3388 (U.S. Jan. 4, 2016) (No. 15-862). "The right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Smith*, 494 U.S. at 879 (internal quotations and citations omitted).

The Reproductive FACT Act is a rationally based, neutral law of general applicability. It requires covered facilities to provide factual information about the availability of pregnancy-related public health services and whether a covered facility has a licensed medical provider at the time a woman first interacts with it. *See* ER016 ("The object of the Act is to ensure pregnant women are fully informed of their health care options and when they are obtaining treatment from licensed providers."). Indeed, the Act was based on findings that many women are unaware of the free or low cost public programs available to provide them with such services, and

50

that women need to be notified of those resources as soon as possible because pregnancy decisions are time sensitive. *See* Assem. Bill No. 775, § 1(a)-(d). This is particularly true in light of the expansion of the Affordable Care Act, which made millions of Californian women newly eligible for Medi-Cal services.

The Act exempts some licensed clinics from the relevant provisions. Those exemptions do not, however, undermine its general applicability. Section 12472(c)(2) exempts clinics operated by the United States or any of its departments and licensed primary care clinics enrolled as a Medi-Cal provider and a provider in the Family PACT. The legislative history explains the reason for the exemption. According to the Assembly Committee Judiciary, "a licensed primary care clinic that is both a Medi-Cal provider and a Family PACT provider" already offers "the full continuum of health care services." Assem. Comm. on Judiciary, Analysis of Assembly Bill No. 775, at 9. Thus, because the entire spectrum of services, as specified in the licensed facilities notice requirement, is already provided by a Medi-Cal and Family PACT provider, a notice telling such clinics' patients how to find those services would serve little purpose. *Id.; cf. Stormans*, 794 F.3d at 1077-78 (holding Washington's requirement that all pharmacies deliver Plan B prescriptions, notwithstanding any religious, moral, or

51

personal objection by the owners, was neutral and generally applicable even though statute provided certain non-religious exemptions).

Even though the Act is facially neutral, Plaintiffs contend that the Legislature impermissibly focused on religious entities, specifically "crisis pregnancy centers," singling them out for their refusal to perform abortions or provide referrals for such services. *See Church of the Lukumi Babalu Aye*, 508 U.S. at 546 (if "the object of the law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and must undergo the most rigorous scrutiny"). But *Lukumi* concerned a "religious gerrymander" that drew a fence around a particular religious practice without regard to the legislation's otherwise neutral purposes. 508 U.S. at 535. More specifically, essentially the only conduct subject to the ordinance at issue in *Lukumi* was "the religious exercise of Santeria church members," while practices like kosher slaughter were exempt under the law. *Id*. at 536.

Religious practices were also exclusively targeted in *Central Rabbinical Congress of U.S. & Canada v. New York City Dept. of Health & Mental Hygiene* (2d Cir. 2014) 763 F.3d 183, 186, in which the court found that a city health regulation prohibiting direct oral suction as part of a circumcision without first obtaining signed written consent from one of the

52

child's parents was neither neutral nor generally applicable. As the court reasoned, "[t]he Regulation is not neutral because it purposefully and exclusively targets a religious practice for special burdens." 763 F.3d at 186. And the Regulation was not generally applicable "because it is underinclusive in relation to its asserted secular goals: the Regulation pertains to religious conduct associated with a small percentage of HSV infection cases among infants, while leaving secular conduct associated with a larger percentage of such infection unaddressed." *Id.*

Here, in contrast to the regulations in *Lukumi* and *Central Rabbinical*, the Act applies to all covered facilities, regardless of religious affiliation, that have a primary purpose of providing family planning or pregnancy-related services and, in the case of licensed covered facilities, that are not otherwise capable of enrolling women in the Medi-Cal program. Contrary to Plaintiffs' suggestion, the Act does not target Christianity or even a pro-life viewpoint. Rather, the Act permissibly takes aim at the dissemination of inaccurate, dishonest, or misleading health care information—irrespective of religion—and is focused on making sure women obtain the information they need, when they need it, to make time-sensitive reproductive decisions. The court below correctly found that "there is no evidence to suggest the Act burdens only conduct motivated by religious belief." ER017.

53

The district court did not abuse its discretion in concluding that Plaintiffs failed to demonstrate a likelihood of success on the merits of their free exercise claim.

## II. THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGHED HEAVILY AGAINST AN INJUNCTION.

In the court below, Plaintiffs had to show "that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009) (moving party has burden of establishing elements necessary to obtain injunctive relief). Where, as here, the government is a party, these two factors "merge" into a single inquiry. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) *cert. denied*, 134 S. Ct. 2877.

The district court properly weighed the equities and reasonably found that the public interest weighed against the injunctive relief sought. If the court had enjoined the Act, it would have harmed the numerous California women who "are in need of publicly funded family planning services, contraception services and education, abortion services, and prenatal care and delivery," but are unaware of the public programs available to provide them with those vital services, or that they may be visiting an unlicensed

54

facility that cannot provide those services. Assem. Bill No. 775, § 1(b). It also would have prevented those women in California who seek professional pregnancy-related goods and services from Plaintiffs, or similar entities, from receiving an incontrovertible statement about the availability of free or low cost care at the moment the Legislature determined it was most necessary for women to receive it. The district court correctly declined to interfere with the Legislature's intention that California women eligible for free or low cost family planning services have access to such care and that those women have timely and accurate information when they seek it.

The district court also correctly found that Plaintiffs failed to establish an equivalent harm, much less harm that outweighs the fact that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977); *see also Clark v. Coye*, 60 F.3d 600, 603-04 (9th Cir. 1995) ("[d]ue to concerns of comity and federalism, the scope of federal injunctive relief against an agency of state government" is carefully scrutinized). Indeed, the Act does not prohibit Plaintiffs from voicing criticisms of the free and low cost services listed in the notice. Nor does it require them to provide abortions or even, as Plaintiffs claim, refer patients to clinics that do provide

55

such services. Under the Act, Plaintiffs remain free to advance their viewpoint or express any kind of opinion.

Plaintiffs argue that the balance of equities tips in their favor simply because this case involves First Amendment concerns. Not so. Even though in most cases the public interest favors the exercise of First Amendment rights, "where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may [then] in the public interest withhold relief until a final determination of the rights of the parties, even though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). That is particularly true here, given that the Act is consistent with the First Amendment. Moreover, enjoining the Act during the pendency of litigation would have adversely affected the ability of Californian women who are or may be pregnant from accessing neutral, factual information vital to their time-sensitive reproductive decisions—harm for which no bond could have compensated.

Accordingly, the district court did not abuse its discretion in concluding that Plaintiffs failed to carry their burden to show that issuing an injunction was in the public interest.

56

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court's denial of Plaintiffs' motion for preliminary injunction.

Dated: April 14, 2016   Respectfully submitted,

        KAMALA D. HARRIS
        Attorney General of California
        DOUGLAS J. WOODS
        Senior Assistant Attorney General
        STEPAN A. HAYTAYAN
        Supervising Deputy Attorney General

        */S/ ANTHONY R. HAKL*
        ANTHONY R. HAKL
        Deputy Attorney General
        *Attorneys for Appellees Kamala D. Harris*
        *and Edmund G. Brown, Jr.*

SA2016100624
12221735.doc

57

16-55249

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, et al.,**

  Plaintiffs and Appellants,

v.

**KAMALA HARRIS, Attorney General of the State of California, in her official capacity, et al.,**

  Defendants and Appellees.

---

## STATEMENT OF RELATED CASES

The following related cases are pending: *LivingWell Medical Clinic, et al. v. Kamala Harris, et al.* (9th Cir. 15-17497) (N.D. Cal 4:15-cv-04939-JSW) and *A Woman's Friend Pregnancy Resource Clinic, et al. v. Harris*, (9th Cir. 15-17517) (E.D. Cal. 2:15-cv-02122-KJM-AC).

58

Dated: April 14, 2016        Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
DOUGLAS J. WOODS
Senior Assistant Attorney General
STEPAN A. HAYTAYAN
Supervising Deputy Attorney General


*/s/ ANTHONY R. HAKL*
ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Appellees Kamala D. Harris*
*and Edmund G. Brown Jr.*

# CERTIFICATE OF COMPLIANCE

## PURSUANT TO FED.R.APP.P 32(a)(7)(C) AND CIRCUIT RULE 32-1
## FOR 16-55249

I certify that:  (check (x) appropriate option(s))

**[X]**   1.  Pursuant to Fed.R.App.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached **opening/answering/reply/cross-appeal** brief is

**[X]**   Proportionately spaced, has a typeface of 14 points or more and contains 10,842 words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words

or is

**[ ]**   Monospaced, has 10.5 or fewer characters per inch and contains ____ words or ___ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

**[ ]**   2.  The attached brief is **not** subject to the type-volume limitations of Fed.R.App.P. 32(a(7)(B) because

**[ ]**   This brief complies with Fed.R.App.P 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages.

or

**[ ]**   This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

**[ ]**   Proportionately spaced, has a typeface of 14 points or more and contains _____ words,

or is

**[ ]**   Monospaced, has 10.5 or fewer characters per inch and contains __ pages or __ words or __ lines of text.

**[ ]**   3.  Briefs in **Capital Cases.**
This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 and is

**[ ]**   Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words).

or is

**[ ]**   Monospaced, has 10.5 or fewer characters per inch and contains __ words or __ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

60

[ ]  **4. Amicus Briefs.**

[ ]    Pursuant to Fed.R.App.P 29(d) and 9th Cir.R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less,

or is

[ ]    Monospaced, has 10.5 or few characters per inch and contains not more than either 7,000 words or 650 lines of text,

or is

[ ]    Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed.R.App.P. 32 (a)(1)(5).


April 14, 2016                            /s/ Anthony R. Hakl

              Dated                      Anthony R. Hakl
                                                 Deputy Attorney General

61

# ADDENDUM



STATE OF CALIFORNIA
**AUTHENTICATED**
ELECTRONIC LEGAL MATERIAL

**Assembly Bill No. 775**

CHAPTER 700

An act to add Article 2.7 (commencing with Section 123470) to Chapter 2 of Part 2 of Division 106 of the Health and Safety Code, relating to public health.

[Approved by Governor October 9, 2015. Filed with
Secretary of State October 9, 2015.]

LEGISLATIVE COUNSEL'S DIGEST

AB 775, Chiu. Reproductive FACT Act.

Existing law, the Reproductive Privacy Act, provides that every individual possesses a fundamental right of privacy with respect to reproductive decisions. Existing law provides that the state shall not deny or interfere with a woman's right to choose or obtain an abortion prior to viability of the fetus, as defined, or when necessary to protect her life or health. Existing law specifies the circumstances under which the performance of an abortion is deemed unauthorized.

This bill would enact the Reproductive FACT (Freedom, Accountability, Comprehensive Care, and Transparency) Act, which would require a licensed covered facility, as defined, to disseminate a notice to all clients, as specified, stating, among other things, that California has public programs that provide immediate free or low-cost access to comprehensive family planning services, prenatal care, and abortion, for eligible women. The bill would also require an unlicensed covered facility, as defined, to disseminate a notice to all clients, as specified, stating, among other things, that the facility is not licensed as a medical facility by the State of California.

The bill would authorize the Attorney General, city attorney, or county counsel to bring an action to impose a specified civil penalty against covered facilities that fail to comply with these requirements.

*The people of the State of California do enact as follows:*

SECTION 1. The Legislature finds and declares that:

(a) All California women, regardless of income, should have access to reproductive health services. The state provides insurance coverage of reproductive health care and counseling to eligible, low-income women. Some of these programs have been recently established or expanded as a result of the federal Patient Protection and Affordable Care Act.

(b) Millions of California women are in need of publicly funded family planning services, contraception services and education, abortion services, and prenatal care and delivery. In 2012, more than 2.6 million California

93

women were in need of publicly funded family planning services. More than 700,000 California women become pregnant every year and one-half of these pregnancies are unintended. In 2010, 64.3 percent of unplanned births in California were publicly funded. Yet, at the moment they learn that they are pregnant, thousands of women remain unaware of the public programs available to provide them with contraception, health education and counseling, family planning, prenatal care, abortion, or delivery.

(c)  Because pregnancy decisions are time sensitive, and care early in pregnancy is important, California must supplement its own efforts to advise women of its reproductive health programs. In California, low-income women can receive immediate access to free or low-cost comprehensive family planning services and pregnancy-related care through the Medi-Cal and the Family PACT programs. However, only Medi-Cal providers who are enrolled in the Family PACT program are authorized to enroll patients immediately at their health centers.

(d)  The most effective way to ensure that women quickly obtain the information and services they need to make and implement timely reproductive decisions is to require licensed health care facilities that are unable to immediately enroll patients into the Family PACT or Presumptive Eligibility for Pregnant Women Medi-Cal programs to advise each patient at the time of her visit of the various publicly funded family planning and pregnancy-related resources available in California, and the manner in which to directly and efficiently access those resources.

(e)  It is also vital that pregnant women in California know when they are getting medical care from licensed professionals. Unlicensed facilities that advertise and provide pregnancy testing and care must advise clients, at the time they are seeking or obtaining care, that these facilities are not licensed to provide medical care.

SEC. 2.  The purpose of this act is to ensure that California residents make their personal reproductive health care decisions knowing their rights and the health care services available to them.

SEC. 3.  Article 2.7 (commencing with Section 123470) is added to Chapter 2 of Part 2 of Division 106 of the Health and Safety Code, to read:

Article 2.7.  Reproductive FACT Act

123470.  This article shall be known and may be cited as the Reproductive FACT (Freedom, Accountability, Comprehensive Care, and Transparency) Act or Reproductive FACT Act.

123471.  (a)  For purposes of this article, and except as provided in subdivision (c), "licensed covered facility" means a facility licensed under Section 1204 or an intermittent clinic operating under a primary care clinic pursuant to subdivision (h) of Section 1206, whose primary purpose is providing family planning or pregnancy-related services, and that satisfies two or more of the following:

93

—3—                    Ch. 700

(1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women.

(2) The facility provides, or offers counseling about, contraception or contraceptive methods.

(3) The facility offers pregnancy testing or pregnancy diagnosis.

(4) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.

(5) The facility offers abortion services.

(6) The facility has staff or volunteers who collect health information from clients.

(b) For purposes of this article, subject to subdivision (c), "unlicensed covered facility" is a facility that is not licensed by the State of California and does not have a licensed medical provider on staff or under contract who provides or directly supervises the provision of all of the services, whose primary purpose is providing pregnancy-related services, and that satisfies two or more of the following:

(1) The facility offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant women.

(2) The facility offers pregnancy testing or pregnancy diagnosis.

(3) The facility advertises or solicits patrons with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.

(4) The facility has staff or volunteers who collect health information from clients.

(c) This article shall not apply to either of the following:

(1) A clinic directly conducted, maintained, or operated by the United States or any of its departments, officers, or agencies.

(2) A licensed primary care clinic that is enrolled as a Medi-Cal provider and a provider in the Family Planning, Access, Care, and Treatment Program.

123472. (a) A licensed covered facility shall disseminate to clients on site the following notice in English and in the primary threshold languages for Medi-Cal beneficiaries as determined by the State Department of Health Care Services for the county in which the facility is located.

(1) The notice shall state:

"California has public programs that provide immediate free or low-cost access to comprehensive family planning services (including all FDA-approved methods of contraception), prenatal care, and abortion for eligible women. To determine whether you qualify, contact the county social services office at [insert the telephone number]."

(2) The information shall be disclosed in one of the following ways:

(A) A public notice posted in a conspicuous place where individuals wait that may be easily read by those seeking services from the facility. The notice shall be at least 8.5 inches by 11 inches and written in no less than 22-point type.

(B) A printed notice distributed to all clients in no less than 14-point type.

93

(C) A digital notice distributed to all clients that can be read at the time of check-in or arrival, in the same point type as other digital disclosures. A printed notice as described in subparagraph (B) shall be available for all clients who cannot or do not wish to receive the information in a digital format.

(3) The notice may be combined with other mandated disclosures.

(b) An unlicensed covered facility shall disseminate to clients on site and in any print and digital advertising materials including Internet Web sites, the following notice in English and in the primary threshold languages for Medi-Cal beneficiaries as determined by the State Department of Health Care Services for the county in which the facility is located.

(1) The notice shall state: "This facility is not licensed as a medical facility by the State of California and has no licensed medical provider who provides or directly supervises the provision of services."

(2) The onsite notice shall be a sign at least 8.5 inches by 11 inches and written in no less than 48-point type, and shall be posted conspicuously in the entrance of the facility and at least one additional area where clients wait to receive services.

(3) The notice in the advertising material shall be clear and conspicuous. "Clear and conspicuous" means in larger point type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language.

123473. (a) Covered facilities that fail to comply with the requirements of this article are liable for a civil penalty of five hundred dollars ($500) for a first offense and one thousand dollars ($1,000) for each subsequent offense. The Attorney General, city attorney, or county counsel may bring an action to impose a civil penalty pursuant to this section after doing both of the following:

(1) Providing the covered facility with reasonable notice of noncompliance, which informs the facility that it is subject to a civil penalty if it does not correct the violation within 30 days from the date the notice is sent to the facility.

(2) Verifying that the violation was not corrected within the 30-day period described in paragraph (1).

(b) The civil penalty shall be deposited into the General Fund if the action is brought by the Attorney General. If the action is brought by a city attorney, the civil penalty shall be paid to the treasurer of the city in which the judgment is entered. If the action is brought by a county counsel, the civil penalty shall be paid to the treasurer of the county in which the judgment is entered.

SEC. 4. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

O

93

# CERTIFICATE OF SERVICE

Case Name: **National Institute of Family and Life Advocates, et al. v. Kamala Harris, et al. [APPEAL]**     No.   **16-55249**

I hereby certify that on <u>April 14, 2016</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**APPELLEE'S ANSWERING BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>April 14, 2016,</u> at Sacramento, California.

| Tracie L. Campbell | /s/  Tracie Campbell |
|:---:|:---:|
| Declarant | Signature |

SA2016100624
12222355.doc